BUCKLEY'S ADMINISTRATOR v. W. H. HOWARD AND WIFE.

1. The will of a married woman devised a number of slaves, her separate property, to her children, and appointed her husband, the father of the legatees, to be their guardian, with directions that the slaves should be kept together and prudently managed by him. *Held*, that the obligations imposed by this testamentary guardianship differed in no material respect from those ordinarily assumed by guardians of the estates of minors.

2. A father is bound to raise and educate his children at his own expense, and is not exonerated from this liability by the fact that his children have estates of their own, of which he is the guardian ; and therefore he is not entitled, in the settlement of his guardianship accounts, to charge

them with the cost of their nurture and education. But if he was unable to provide for their education out of his own means, the case would be different.

APPEAL from Fort Bend. Tried below before the Hon. L. Lindsay.

This suit was instituted on the twelfth of March, 1867, by the guardian of Mary Buckley (who subsequently married the appellee, W. H. Howard), to recover from the estate of C. W. Buckley, her deceased father, the sum of $17,606, alleged to be due her for the hire of a number of slaves, bequeathed by her mother, Mrs. L. J. Buckley, to the said Mary and her two brothers, Frederick C., and C. W., Jr., who had both died, leaving said Mary the sole survivor.

The hires claimed were from the death of Mrs. Buckley, in 1851, to the emancipation of the slaves, in June, 1865.

A full account of Mrs. Buckley's will is reported in the case of Walker v. Howard, 34 Texas, 478, and a perusal of that case will materially contribute to a clearer comprehension of this case.

The line of defense pursued by Judge Buckley's administrator is disclosed in the argument of his counsel in this court, and the other material facts are indicated in the opinion.

A rehearing was asked and refused.

*J. T. Harcourt* and *C. H. Kendall*, for the appellant.—The court decided a different case from the one made by the pleadings.

The plaintiff did not charge a breach of trust funds.

The action was upon an account for the hire of slaves.

It is not pretended that there was any contract or agreement that Buckley should pay hire for the use of the slaves.

The plaintiff's case rested upon a supposed implied contract, arising from the proper construction of the will of Mrs. L. J. Buckley.

We deny that the legal interpretation of the will would authorize the construction contended for. "The law frequently supplies by its implications the want of express agreements between the parties; but it never overcomes by its implications the express provisions of parties.    *    *    *    The general ground of a legal implication is, that the parties to a contract would have expressed that which the law implies, had they thought of it." (2 Vol. Pars. on Cont., 27.)

The will was in the nature of a contract, because it is recited that it is "with the consent and approbation of my beloved husband, Constantine W. Buckley."

The absence of any stipulation to pay hire is conclusive proof that it was not the intention of the parties that hire should be paid. It was evidently a family adjustment, intended for the benefit of Judge C. W. Buckley, as well as his children.

By article fifth of the will it is provided, "I will and bequeath to my children my private property, consisting of the following slaves," etc.

By article seventh of the will it is provided, "It is my will and desire that the property herein bequeathed to my children shall be kept together, and prudently managed by my said husband."

By the eighth article it was provided that, upon either of the children arriving to the age of majority, or marrying, the county court, by a commissioner, should divide and set apart by allotment the share of such child in the property, "which shall pass to and vest in said child, to his or her own proper use forever."

Now it will be observed that the law defining the

marital rights of parties (Art. 4641, Paschal's Digest) provides that "during the marriage the husband shall have the sole management of the separate property of the wife."

During the term of this sole management by the husband, he is not chargeable with hire for the use of the property. It was manifestly the intention of the parties, by the stipulations of the seventh article of the will, to give to the husband the same sole management of the property after the dissolution of the marriage by death, and to this extent it was enlarging the provisions of the law.

The property is required to be kept together, and prudently managed by the husband.

By the eighth article of the will the property did not and could not vest in the children until the county court, by a commissioner, should allot and set apart the share of such child in the property.

This was a condition precedent to passing and vesting the title to the property, and until that was done the husband was not in fault in managing the property as directed by the will.

"In construing a will, conjecture must not be taken for implication; but necessary implication means not natural necessity, but so strong a probability of intention, that an intention contrary to that which is imputed to the testator cannot be supposed." (Lord Eldon, 1 V. and B., 466.)

"The presumption of law is in favor of parental honesty and good faith." (The Law of Trusts and Trustees, p. 133; Jenkins v. Pye, 12 Peters, 253; Story's Equity, § 309.)

As to constructive trusts, it is said: "In equity, the summary remedy is to convert the wrongdoer into a trustee, and the one whose rights have been invaded

thereby into a *cestui qui trust*, and then to enforce the execution of the trust." (Story's Equity, § 184.)

To authorize this constructive trust, there must be proof of a fraudulent intent on the part of Judge Buckley, an intention to be unjust, or to do injustice, and proof of some act designed to carry out such intention. (The Law of Trusts and Trustees, p. 113.)

" In conditions precedent, the legatee has no vested interest in the legacy until the condition is performed." (Willard's Equity Jurisprudence, p. 523.)

" The general rule in regard to conditions precedent is, that they must be strictly performed." (Ib., 534.)

We think a proper construction of the will shows that it was not the intention of the parties that the husband, Judge Buckley, should be charged, either as trustee or otherwise, for "keeping together and managing the property mentioned in the will." But if there was any legal or equitable liability resting upon said Buckley, he discharged it fully and completely by executing the deed of conveyance to F. Z. Buckley, on the twenty-first day of October, 1865.

The estimated amount of the consideration should have no weight in considering what was the intention of the parties at the time, and from all the circumstances, in executing and adopting that agreement, as a full, fair and complete adjustment of all claims.

The plaintiffs allege that it was given and received in part payment. Then it devolved upon them to show that it was only in part, as there is no reservation in the deed to rebut the presumption of a full settlement.

The testimony of the witness, A. B. Nibbs, in relation to "the reasonable worth of the hire of each of said slaves, from September, 1851, to June, 1865," was the irrelevant and illegal testimony upon which the judgment of the court was based.

There was no proof as to the "worth of the hire" to the said C. W. Buckley, and he was required by the will to "keep and manage them," and was not authorized to hire them out.

*Gray & Botts*, for the appellees.—To the construction drawn from the pleadings by appellant we do not agree. The effect of allegations made therein is quite different, to our apprehension, from that given by appellant, in several instances.

1. The plaintiffs below did charge a breach of trust funds. What could have been a clearer charge of breach of trust than the facts alleged, that Buckley received the use and benefit of plaintiffs' property while they were minors, in his character as their guardian, and had not accounted therefor, save in part by conveyance of property in the manner admitted in the petition? If a charge against a guardian, that he has received the hire of his wards' property, without accounting for it, be not a charge of breach of trust, we are unable to state what it should be termed. If the facts charged constitute a fraud, or a breach of trust, it is never necessary to call it by the general name. It is the legal conclusion from the facts stated which constitutes a breach of trust, and not merely the general averment of such breach. This principle is involved in the decisions of Guffey v. Mosely, 21 Texas, 410 ; Van Alstyne v. Bertrand, 15 Texas, 179 ; Wells v. Fairbanks, 5 Texas, 585 ; Mims v. Mitchell, 1 Texas, 447 ; Caldwell v. Haley, 3 Texas, 318 ; Carter v. Wallace, 2 Texas, 208.

But it is contended that Buckley was not liable for the hire of the slaves ; "that the absence of a stipulation to pay hire (in the will of his wife) is conclusive proof that it was not the intention of the parties that hire should be paid."

For this remarkable conclusion no authority is cited ; but it appears to us to be directly contrary to the elementary authority quoted—2 Parsons on Contracts, 27. Undoubtedly, in the absence of express stipulation, the law will imply, "that the parties to a contract would have expressed that which the law implies, had they thought of it."

Supposing that there is no express direction in Mrs. Buckley's will, that her husband, as guardian, shall be responsible for hire, would not the law hold him liable to account, to at least the extent in which he would have been liable without a will? Had there been no will, the surviving husband would be responsible to the children for the value of the hires. Moreover, if he continued to use the property, and mingle its proceeds with his own, the minors could charge him for its value, or claim a share of all profits made with it, as they should see fit.

But we contend that the will, properly construed, did contemplate that Buckley should account to the children for the use or hire of these slaves. The first article of the will appointed him "guardian, without bond and security, of the persons and property of my children, Frederick Zachariah, Constantine Whitehead and Mary Louisa." The second and third direct the mode in which she wishes the children educated. The fifth, "I will and bequeath to my children my private property," consisting of these slaves, and expressly states that they are her separate property. The sixth wills and bequeaths her share of the community property to her children ; that is, the remainder of such property after payment of debts. Now, under these clauses, the title to the property passed to and vested in the children jointly upon her death, and did not remain in abeyance until partition to each, under article

eighth, as appellant supposes. In evidence of this, if
any were needed, the seventh article, after providing that
"the property shall be kept together and prudently
managed" by the guardian (which is precisely the duty
of such a trustee), then declares, "and in case any of
my said children shall die during minority and without
marriage, then his or her share or shares shall pass to
and vest in the survivor or survivors." This clause,
we observe, is not noticed in the appellant's brief.
Then the eighth article proceeds to direct how the
property shall be divided and delivered to each child
as it arrives at majority, and expressly states how final
discharge shall be given by receipts. The declaration
that the part allotted to each child shall thereon pass
to and invest in such child, did not at all affect the joint
title by which they previously held it, but only effected
a severance by the partition. We do not comprehend
appellant's idea that it was a condition precedent. Upon
consideration of the entire will, it seems quite plain
that the testatrix intended, and that C. W. Buckley
expected when he accepted the trust of testamentary
guardian under it, that he should be liable as guardian
for the property, and for its prudent use and manage-
ment for the benefit of his children. He accepted the
trust, and instead of keeping separate account of it and
of its income, he used it as his own on his own plantation,
acquired after his wife's death. He commingled the
property with his own, and also the income from it. It
scarcely needs authority for the proposition, that a
guardian or other trustee so using the trust property
and fund, makes himself liable to the largest extent in
equity. In such case he will be held liable for all
profits made, if any; and if not, then to account for the
full amount of value received, or that might have been
received, and for interest on the income, calculated with

annual rests, in the account. (2 Kent's Com., 231, and notes, citing Green v. Winter, 1 Johns. Ch. R., 26, and various others; Kyle v. Barnett, 17 Alabama, 306; Kerr v. Laird, 27 Miss., 544; Bryant v. Craige, 12 Alabama, 354; Dunscombe v. Dunscombe, 1 Johns. Ch. 509.)

WALKER, J.—Mrs. J. L. Buckley was the wife of Judge C. W. Buckley. On the twenty-ninth day of March, 1851, she made and published her last will and testament. This will appears to have been admitted to probate in the county court of Harris county; but at what time, the certificate of the clerk does not inform us.

The petition states that Mrs. Buckley departed this life on the sixteenth day of September, 1851; which fact does not appear to be disputed. There are singular inaccuracies in this record; the will is sometimes referred to as the will of Jane L. Buckley, and at other times as that of L. J. Buckley. But no question is raised as to the authenticity of the will, or its validity as a testament.

Among other provisions, Mrs. Buckley bequeathed to her children therein named certain slaves, which were her private property. In a subsequent article of the will the following language occurs:

"It is my will and desire that the property herein bequeathed to my children *shall be kept together and prudently managed by my said husband.*"

This language refers to the slaves already devised to the children of the testatrix. We are asked to determine what obligation this language imposed on the surviving husband, who was made the testamentary guardian of the legatees, who were his own children; and we are unable to discover wherein the obligation

differed in any way from that ordinarily assumed by the guardians of the estates of minors.

The law, in all cases of this character, imposes prudent management; and for this legal prudence (for the law determines the degree of prudence), the guardian must sooner or later account to his ward.

The administrator of C. W. Buckley's estate opposes this action on two grounds ; the first, that there is no liability arising out of the relation of C. W. Buckley and his children (the legatees); and secondly, that whatever liability might have arisen was fully discharged and settled by the conveyance of thirteen hundred acres of land, conveyed by C. W. Buckley to his son, F. Z. Buckley, by deed dated October 21, 1865. The consideration for this land is stated at thirteen thousand dollars, in the deed. It is contended on the argument that the lands conveyed were really worth a much larger sum, but we have no evidence, if indeed evidence could have been admitted for that purpose, to impeach the consideration named in the deed.

We are disposed, without intending that the question which here arises shall control the decision of the case, to suggest that we are unable to discover any authority whatever on the part of F. Z. Buckley to compromise the rights of his co-legatees (brother and sister) by taking lands in settlement of their claims against their guardian.

But his honor the district judge, whose judgment we are asked by the appellees to affirm, does not appear to have given any significance to this question. But, in the light we find ourselves compelled to view it, we do not consider the right of the appellees as precluded by any settlement made between their guardian and co-legatee.

There may be an equity, however, arising here,

which could be construed to favor the rights of other creditors of the estate of C. W. Buckley, if it be shown that the lands conveyed have passed into the hands of the appellees; but it does not appear that Mrs. Howard could have ratified the transactions between her father and brother, inasmuch as this suit was brought in the district court, on the twelfth day of March, 1867, by her guardian, and she has since intermarried with W. H. Howard, her co-appellee.

But we believe it is not pretended that there has ever been an express ratification, and certainly the law imposed no obligation upon her to ratify the act of her father and brother.

But the district court appears to have considered that the account of $17,606 should be offset, *pro tanto*, by the consideration named in the deed; and this theory of the case is acquiesced in by the able counsel of the appellees.

It was impossible for the district judge, and would be alike so for us, to do more than approximate the actual sum due from the estate of C. W. Buckley to the appellees. We can find no fault with the judgment of the district court in its estimate of the amount due in 1865, the time to which all the evidence is directed. But the question arises, why should his honor the district judge decline to allow interest on the $4560, found by him to be due to the children of C. W. Buckley at the time of his death? For it will not do to say that it was the intention of the judge to consider this as the amount due at the rendition of the judgment; for he establishes this as a preferred claim, presented within twelve months of the grant of letters of administration.

We are led to consider, by remarks of counsel, that his honor the district judge declined to allow interest

on the ground that interest should be offset by the expenses of nurture and education.

We cannot adopt this view of the matter. C. W. Buckley, as the father and natural guardian, was bound by the obligations, both of law and morality, to raise and educate his children at his own expense, and the law gave no right to him to deduct from, or cut down, the legacy which they received from their mother, for this purpose.

Had the children been thoroughly and expensively educated, and the father poor and unable to provide for their education, both law and equity might then have taken a different view of this subject; but the evidence shows clearly want of care and diligence, indeed negligence, on the part of C. W. Buckley in the education of his children.

The appellant's counsel urge that there was error in the court in allowing the judgment to stand as a preferred claim against the estate of C. W. Buckley. If it be true, that the claim was not presented within twelve months, it was incumbent on the appellant to make that fact apparent to the court. It was the affirmative of an issue presented to the court on his pleading. The claim shows, and it is averred in the petition, that it was presented to the administrator, Kendall, on the sixth of March, 1867, and by him rejected. This date was fixed by the pleadings, and it would have been an easy matter for the administrator to have established the fact when his letters were granted, without going out of the court house. But this was matter of record, and must be presumed to be within the knowledge of the court; in fact, it was part and parcel of the very case under consideration, and we cannot presume that the court would have committed a blunder of this kind with its own records in plain view. But it is difficult

to account for the silence of counsel on this subject in the district court, and their now urging it upon our consideration.

As a matter of practice, this question is too well settled to require comment. (Allen v. Traylor, 31 Texas, 124.)

We are of opinion that this judgment should be reformed and rendered for the principal of $4,560, with interest at the rate of eight per cent. per annum from the date of presentation, to be computed by the clerk of this court.

REFORMED AND RENDERED.